BERT B. CLARK, Plaintiff-Appellant, v. BOARD OF FIRE AND POLICE COMMISSIONERS OF THE VILLAGE OF BRADLEY *et al.*, Defendants-Appellees.

Third District  No. 3—92—0637

Opinion filed May 14, 1993.

Roger C. Elliott, of Elliott & McClure, of Momence (Paul F. Michel, of counsel), for appellant.

Alan F. Smietanski, of Kankakee, for appellee David Greenstreet.

Thomas F. McGuire & Associates, Ltd., of Long Grove (Thomas F. McGuire, of counsel), for other appellee.

JUSTICE BRESLIN delivered the opinion of the court:

The plaintiff, Bert B. Clark, challenged the decision of the defendants, Police Chief David Greenstreet and the Board of Fire and Police Commissioners of the Village of Bradley (hereinafter the Board) to terminate his employment as a police officer for the Village of Bradley. The trial court upheld the decision of the Board. We affirm.

Following an investigation into his activities on June 5, 1990, four charges were brought against Officer Clark. The first charge alleged official misconduct in violation of section 33—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1989, ch. 38, par. 33—3) inasmuch as Officer Clark failed to investigate a violation of the criminal law, failed to make a written report and failed to arrest persons who were acting in violation of the criminal law. The second charge alleged obstructing justice in violation of section 31—4 (Ill. Rev. Stat. 1989, ch. 38, par. 31—4) inasmuch as Officer Clark knowingly erased an audio tape belonging to the police department with the intent to prevent apprehension of or prosecution of himself or someone else on a criminal charge. The third charge alleged bribery in violation of section 33—1 (Ill. Rev. Stat. 1989, ch. 38, par. 33—1) inasmuch as Officer Clark had attempted to influence the testimony of dispatcher Klingler by offering him employment and money for his defense fund. The fourth charge alleged conspiracy in violation of section 8—2 (Ill. Rev. Stat. 1989, ch. 38, par. 8—2) inasmuch as Officer Clark and trustee Robert Redmond agreed to commit the offense of official misconduct.

The record reveals that on June 5, 1990, Officer Clark was on duty patrolling the streets of Bradley. Between 9:30 p.m. and 10 p.m. the police dispatcher (dispatcher Klingler) received two phone calls complaining of a teenage drinking party taking place at 248 South Blaine Street. After the second call, dispatcher Klingler sent Officer Clark to investigate.

The party was being held at the home of Bob Redmond, a trustee for the Village of Bradley. When Officer Clark arrived, a young man, later identified as Ronald Malnar, Jr., was sitting on the front porch holding a walkie-talkie and drinking from a can of Coke. Malnar testified that while he and Officer Clark waited for Redmond to come out of the house, Officer Clark remarked that there were a lot of kids in the house and Malnar replied that there were. Officer Clark then asked what the kids were drinking, and Malnar responded, "Budweiser and stuff like that." Malnar further testified that when Redmond appeared, Officer Clark informed Redmond of the complaints and volunteered to try to find out who had made the calls.

Malnar testified that after his first visit, Officer Clark returned to the Redmond home, this time approaching the back door. He asked Redmond when the party would end and advised Redmond to keep the noise down. Officer Clark further advised Redmond that he believed at least one of the complaints had come from the two women who were visiting at a house across the street from the Redmond home.

According to dispatcher Klingler and the written log of radio transmissions, after his initial contact with Robert Redmond, Officer Clark radioed the station to report that he had investigated the party, that there were no parking problems and no signs of underage drinking.

After clearing from the scene, Officer Clark appeared at the Bradley police station and spoke with Klingler about the phone calls complaining of the party at Redmond's home. Klingler replayed the second complaint call so Officer Clark could try to identify the voice. Klingler testified that shortly after this he saw Officer Clark in the room which contained the main tape deck. According to Klingler, only dispatchers, lieutenants and the chief were allowed in that room, and he did not know whether Clark had authorization to be there. A later check of the tape revealed that there was no recording of the radio transmission Officer Clark had made from the scene of the party.

Dispatcher Klingler further testified that after the chief of police ordered an investigation into the actions of Officer Clark on the night in question, Officer Clark spoke with him several times about the radio transmission made from the Redmond home on the night of the party. Officer Clark repeatedly insisted that he had not cleared by radio from the party, but that he had cleared when he arrived back at the station. Officer Clark also offered Klingler a part-time job maintaining security at a local festival and offered to give Klingler $100 to use for paying Klingler's attorney.

At the hearing before the Board, Officer Clark objected to the participation of two members of the Board, arguing that they could not serve because they had not posted a bond as required by statute. He further argued that the department rules were invalid because they were based on an unconstitutional delegation of authority to the police chief. However, the Board found Officer Clark guilty of the charges by a preponderance of the evidence and terminated his employment.

This case presents four issues for our consideration: (1) whether the alleged failure of two of the commissioners to post a bond deprived the Board of its power to hear the case; (2) whether the police department rules are based upon an unconstitutional delegation of power to the chief of police; (3) whether the Board was required to find Officer Clark guilty of the charges by clear and convincing evidence; and (4) whether the Board's decision was against the manifest weight of the evidence.

As to the first issue, Officer Clark argues that the Board lacked the power to rule on his case because two of the commissioners had not posted a bond as required by statute.

■■ Section 3—14—3 of the Illinois Municipal Code requires all municipal officers to post a bond of security when taking office. (Ill. Rev. Stat. 1991, ch. 24, par. 3—14—3.) However, a person actually performing the duties of a position is an officer *de facto* and his acts are valid as against the public or third parties. (*Swanson v. Board of Police Commissioners* (1990), 197 Ill. App. 3d 592, 555 N.E.2d 35.) Thus it appears that the lack of a bond is a proper argument only in disputes between the municipality and the municipal officeholder who is required to post the bond. Such is not the situation before us, and therefore, we hold that the alleged failure of two commissioners to post a bond did not deprive the Board of its authority to render a decision in Officer Clark's case.

With regard to the second issue, Officer Clark argues that the regulations he has been accused of violating are invalid because

they are based on an unconstitutional delegation of authority to the chief of police.

■ Although the complaint against Officer Clark alleges the existence of police department rules, it does not allege that Officer Clark violated those rules. Its allegations of wrongdoing are based solely on the criminal code. Therefore, we need not determine the validity of the rules.

Third, Officer Clark argues that he cannot be terminated for a violation of the criminal law unless his guilt is proven by clear and convincing evidence.

In *Drezner v. Civil Service Comm'n* (1947), 398 Ill. 219, 75 N.E.2d 303, the Illinois Supreme Court issued the following apparently self-contradictory statement: "While we adopt and hold that the charge need only be proved by a preponderance of the evidence, *** we believe that the evidence of guilt should be clear and convincing." *Drezner*, 398 Ill. at 227, 75 N.E.2d at 307.

Interpretation of the *Drezner* decision led to two lines of cases. One line espoused the rule that when a crime is charged in a civil proceeding, the evidence must be clear and convincing. (See *Wilkey v. Illinois Racing Board* (1978), 65 Ill. App. 3d 534, 381 N.E.2d 1380; *Shallow v. Police Board* (1981), 95 Ill. App. 3d 901, 420 N.E.2d 618; *Savaglio v. Board of Fire & Police Commissioners* (1984), 125 Ill. App. 3d 391, 465 N.E.2d 1065.) The other line espoused the preponderance of the evidence standard. See *Board of Education of St. Charles Community Unit School District No. 303 v. Adelman* (1981), 97 Ill. App. 3d 530, 423 N.E.2d 254; *Feliciano v. Illinois Racing Board* (1982), 110 Ill. App. 3d 997, 443 N.E.2d 261; *Carrigan v. Board of Fire & Police Commissioners* (1984), 121 Ill. App. 3d 303, 459 N.E.2d 659.

The Illinois Supreme Court addressed the issue again in *Board of Education v. State Board of Education* (1986), 113 Ill. 2d 173, 497 N.E.2d 984. In *Board of Education*, the court balanced the public interest against the private interests in determining that the preponderance of the evidence standard is the correct standard of proof in tenured-teacher dismissal proceedings when a violation of the criminal law has been alleged. However, the court specifically limited its decision to tenured-teacher dismissals and opined that "in certain proceedings the private interests involved may be such as to require a different standard of proof." *Board of Education*, 113 Ill. 2d at 189, 497 N.E.2d at 990.

■ Although we are aware of cases in which courts have applied the preponderance of the evidence standard in police officer

dismissal cases (see *Thornton v. University Civil Service Merit Board* (1987), 154 Ill. App. 3d 1016, 507 N.E.2d 1262; *Schlobohm v. Rice* (1987), 157 Ill. App. 3d 90, 510 N.E.2d 43; *Martin v. Thompson* (1990), 195 Ill. App. 3d 43, 551 N.E.2d 1081), we decline to follow these cases inasmuch as they cite *Board of Education* as authority for using the standard without applying the balancing test outlined in the case. This approach disregards the self-limiting language of the *Board of Education* opinion. Therefore, we will apply the test set forth in *Board of Education* to determine the proper standard of proof for police officer dismissal cases which involve allegations of violations of the criminal law.

■■ The first balancing factor in the test is the private interest sought to be protected. This "requires inquiry into both the nature of the private interest threatened and the permanency of the threatened loss." (*Board of Education*, 113 Ill. 2d at 192, 497 N.E.2d at 992.) The nature of the loss encompasses the monetary interest of the plaintiff in remaining employed. This monetary interest is shared by all police officers whose employment is terminated. The loss is no greater for an officer charged with a violation of a criminal statute. The officer's monetary loss is adequately protected by the preponderance of the evidence standard. See *Board of Education*, 113 Ill. 2d at 192, 497 N.E.2d at 992.

The permanency of the loss encompasses the plaintiff's professional interest in his/her chosen career. In *Board of Education*, the court distinguished between the interests of a teacher and an attorney in their chosen professions. A teacher dismissed for allegedly criminal conduct retains his/her teaching certificate and therefore may continue to teach despite the termination. An attorney charged with criminal conduct, however, may lose his/her license to practice law and consequently his/her career and livelihood. Therefore, the applicable standard in attorney disciplinary hearings should be higher than in teacher dismissal hearings. See *Board of Education*, 113 Ill. 2d at 193, 497 N.E.2d at 992.

Although Officer Clark claims that a police officer discharged for cause "faces the prospect of never again being hired in his chosen profession," that statement applies equally to all officers discharged for cause and the burden does not fall more heavily on officers charged with criminal conduct. Further, a police officer discharged for cause or for allegedly criminal conduct is not barred by law from attaining a position with another police force. See Ill. Rev. Stat. 1991, ch. 24, par. 10—2.1—6.

Therefore, we find that a police officer's position is more like that of a teacher than an attorney, and a preponderance of the evidence standard adequately protects a police officer's professional interests.

The second factor articulated in *Board of Education* is the public or government interest. Just as a school district has an interest in dismissing teachers who violate the law and as such are poor role models for the youngsters they teach, a police department has an interest in making sure its officers are enforcing the laws they are sworn to uphold. Thus, as in *Board of Education*, it is in the public's interest to apply a standard to police officer dismissals which reduces the risk of error that may result in an unfit person remaining a police officer. See *Board of Education*, 113 Ill. 2d at 194, 497 N.E.2d at 993.

We conclude that the possible harm to each party in police officer dismissals is roughly equal. Thus, it is appropriate for the parties to share the risk of error and a preponderance of the evidence standard is sufficient. See *Board of Education*, 113 Ill. 2d at 194, 497 N.E.2d at 993.

Consequently, we hold that the Board applied the appropriate standard of proof when it found Officer Clark guilty of the charges by a preponderance of the evidence.

Lastly, Officer Clark argues that the Board's findings with regard to the guilt of Officer Clark are against the manifest weight of the evidence and further that the Board's decision to discharge Officer Clark was arbitrary and unreasonable.

With regard to the Board's determination that Officer Clark is guilty of the charges against him, the appellate court's function is not to reweigh the evidence or substitute its judgment for the judgment of the Board but only to determine whether enough evidence exists to support the Board's findings. (*Burgett v. City of Collinsville Board of Fire & Police Commissioners* (1986), 149 Ill. App. 3d 420, 50 N.E.2d 951.) If the findings are based upon facts established by competent evidence, they are considered *prima facie* true and correct. *Flosi v. Board of Fire & Police Commissioners* (1991), 221 Ill. App. 3d 858, 582 N.E.2d 185.

After carefully reviewing the record on appeal, we hold that the decision of the Board is not against the manifest weight of the evidence. While it may be possible to cast an innocent light on some of Officer Clark's activities, it is also at least equally possible to find guilt in the same activities. It is the function of the Board to determine the credibility of the witnesses (*Hruby v. Board of Fire*

*& Police Commissioners* (1974), 22 Ill. App. 3d 445, 318 N.E.2d 132), and we have determined that there is sufficient evidence to uphold its decision.

With regard to the Board's determination that Officer Clark should be discharged, the agency's finding is not considered *prima facie* true and correct and is subject to judicial review. (*Christenson v. Board of Fire & Police Commissioners* (1980), 83 Ill. App. 3d 472, 404 N.E.2d 339.) However, the finding will not be disturbed as long as it is related to the requirements of service and is not so trivial as to be arbitrary or unreasonable. *Humbles v. Board of Fire & Police Commissioners* (1977), 53 Ill. App. 3d 731, 368 N.E.2d 1049.

A police officer may not be discharged except for cause. (Ill. Rev. Stat. 1991, ch. 24, par. 10—2.1—17.) Cause has been defined as "some substantial shortcoming which renders the employees [*sic*] continuance in office some way detrimental to the discipline and efficiency of the service and which the law and sound public opinion recognizes [*sic*] as good cause for his no longer holding the position." *Hruby v. Board of Police & Fire Commissioners* (1974), 22 Ill. App. 3d 445, 453, 318 N.E.2d 132, 138.

■ A police officer's refusal to enforce the law is perhaps the most substantial shortcoming possible. It is clearly detrimental to the discipline and efficiency of the police force, and there can be no doubt that the law and sound public opinion recognize it as good cause for the officer's dismissal. Therefore, we find that the Board's decision to discharge Officer Clark is not arbitrary or unreasonable.

Because we find that the Board's findings regarding Officer Clark's guilt are not against the manifest weight of the evidence and further find that the Board's determination of cause for discharge is not arbitrary or unreasonable, we hold that the trial court did not err in affirming the Board's decision.

We hold that each of Officer Clark's arguments fails, and therefore we affirm the judgment of the circuit court of Kankakee County.

Affirmed.

LYTTON and SLATER, JJ., concur.