**TECHNIC ENGINEERING, LIMITED,**
**f/k/a Fitzroy Engineering, Ltd.,**
**Plaintiff,**

v.

**BASIC ENVIROTECH, INC., an Illinois corporation, Basic International, Inc., an Illinois Corporation, John N. Basic, Sr., Marijo Basic, John Basic, Jr. and Margaret Mary "Peggy" Basic, Defendants.**

No. 97 C 4674.

United States District Court,
N.D. Illinois,
Eastern Division.

June 22, 1999.

Sean Patrick MacCarthy, Marie Louise Nienhuis, Christopher J. Graham, Peterson & Ross, Chicago, IL, for Technic Engineering, Ltd.

Thomas J. Rehwaldt, Chicago, IL, Steven Ackerman, Chicago, IL for Basic Envirotech, Inc., John Basic, Jr.

Gregory Adam Adamski, Karen Conti, Adamski & Conti, Chicago, IL, for John N. Basic, Sr.

Scott J. Szala, Winston & Strawn, Chicago, IL, for Marijo Basic.

Theodore John Low, Jeremy D. Margolis, Howard Kevin Jeruchimowitz, Altheimer & Gray, Chicago, IL, for Margaret Mary Peggy Basic.

Jeffrey Robert Platt, Law Offices of Jeffrey R. Platt, Chicago, IL, for Basic International, Inc.

## MEMORANDUM OPINION AND ORDER

MAROVICH, District Judge.

Plaintiff Technic Engineering, Limited f/k/a Fitzroy Engineering, Ltd. ("Technic") has filed an eight-count Third Amended Complaint against Defendants Basic Envirotech, Inc. ("Envirotech"), Basic International, Inc. ("Basic International") and John N. Basic, Sr., John Basic, Jr., Marijo Basic and Margaret Mary "Peggy" Basic (the "Individual Defendants"). The Individual Defendants presently move for summary judgment on the one count addressed against them: Technic's claim that the Individual Defendants breached a fiduciary duty and induced or participated in a breach of fiduciary duty (Count VI). For the reasons set forth below, the motion is denied.

## BACKGROUND

The following facts are undisputed unless otherwise noted. John N. Basic, Sr. ("John, Sr.") and Marijo Basic at all times were husband and wife, and two of their children are John Basic, Jr. ("John, Jr.") and Peggy Basic. John, Sr. invented certain combustion technologies (the "Basic Technology"). In 1974, John, Sr. incorporated Basic Environmental Engineering, Inc. ("Environmental"), and Environmen-

tal, through a licensing arrangement with John, Sr., marketed the Basic Technology. John, Sr. was the president, sole shareholder and sole director of Environmental at all times. Marijo Basic was Environmental's secretary. In 1989 or 1990, John, Sr. gave John, Jr. the title of Executive Vice President of Environmental.

In January of 1991, Technic (then known as Fitzroy) subcontracted with Environmental to design and fabricate the installation of a single unit incinerator.[1] Beginning in March of 1991, controversies arose between Technic and Environmental regarding performance of the subcontract. This dispute led to an arbitration proceeding wherein Technic filed draft points of claim on June 6, 1993, asserting a claim of approximately $900,000 in damages against Environmental.

Sometime during the first half of 1993, while Basic family members were aware of Environmental's dispute with Technic, the Individual Defendants decided to create a new corporation which would eventually become Envirotech, and Environmental transferred the bulk of its assets to Envirotech. Effective June 30, 1993, John, Sr. terminated the license between himself and Environmental, except for one sub-license which generated income and one sub-license which did not. Once Environmental lost its license, it lost its main thrust of business, and Environmental's employees lost their jobs, making John, Sr. its sole employee.

As of June 30, 1993, and before the transfer of its assets, the fair market value of Environmental's assets was less than the amount of its liabilities. Moreover, Environmental's cash account had a negative cash balance of $5,277, its checking account was overdrawn, it did not have sufficient cash to meet its payroll and it owed past due rent to its landlord. Environmental's only ongoing business after July 1, 1993 was the single sub-license that generated income. On July 2, 1993, Environmental hired Envirotech to provide the employees for that work.

Effective July 1, 1993, John, Sr. licensed the Basic Technology to Envirotech, and Envirotech was incorporated in August 1993. John, Jr., John Sr. and Peggy Basic were its initial directors (although John, Sr. apparently never served as a director). John, Jr. was its president, Marijo Basic its vice president, Laura Willing its secretary and Peggy Basic its treasurer. John, Jr., Peggy Basic, Marijo Basic and several other children of John, Sr. and Marijo Basic were shareholders. Envirotech listed both Marijo Basic and John, Sr. as its employees, and both received checks from Envirotech and were included in its group health plan.

Upon its formation, Envirotech took over the entire two-floor office space previously used by Environmental, except for one office where Environmental had space and John, Sr. and another newly formed family company, Basic International, also officed.[2] Envirotech took over Environmental's existing sales representative contracts and acquired Environmental's goodwill and most of its physical tangible assets. Envirotech generated $664,887.80 in sales from servicing and spare parts work provided to Environmental customers during its first fiscal year (July 1, 1993 to June 30, 1994), and generated over $850,000 in cash receipts from two additional projects.

Technic ultimately obtained an arbitration award against Environmental for ap-

---

**1.** Technic had contracted with Auckland (New Zealand) International Airport to construct a "quarantine waste incinerator," which led to Technic's subcontract with Environmental.

**2.** Basic International, which also started in July 1993, was responsible for supplying de-

signs and "model drawings" to the licensees of the Basic Technology. John, Sr. was initially Basic International's president and sole shareholder. Basic International's Articles of Incorporation identified John, Jr., Peggy Basic and John, Sr. as initial directors.

proximately $1.1 million, but Environmental never paid Technic the award. Technic subsequently filed its Complaint in this Court. Technic's present eight-count Third Amended Complaint asserts that the transfer of assets from Environmental to Envirotech and/or Basic International essentially amounted to the transfer of the business which had been in operation since 1974 under the Environmental name without the vast majority of that business's liabilities, including any liability to Technic. Technic's present Complaint directs seven of the eight counts against Envirotech and/or Basic International. The Individual Defendants presently move for summary judgment on the count directed against them, Count VI, which claims that they breached a fiduciary duty to Technic and induced or participated in a breach of fiduciary duty.

### DISCUSSION

#### I. *Summary Judgment Standards*

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). The moving party has the initial burden of submitting affidavits and other evidentiary material to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Only genuine disputes over "material facts" can prevent a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

To overcome a motion for summary judgment, the opposing party cannot rest on the pleadings but must, by affidavit or other means, set forth specific facts showing that there is a genuine issue of fact. *See* Fed.R.Civ.P. 56(e). While the record "and all reasonable inferences drawn from it [are to be viewed] in the light most favorable to the party opposing the mo-

tion," *Bisciglia v. Kenosha Unified Sch. Dist. No. 1,* 45 F.3d 223, 226 (7th Cir.1995), the nonmovant must show more than "some metaphysical doubt" regarding the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

#### II. *Breach of Fiduciary Duty Claim*

Technic's Third Amended Complaint asserts that the Individual Defendants, as officers of Environmental, owed Technic fiduciary duties from the time Environmental became insolvent and breached their duties. (Third Am. Cmplt. ¶¶ 69–74.) Moreover, to the extent that the Individual Defendants were not officers of Environmental, Technic alleges that they induced or participated in breaches of fiduciary duties by John, Sr. and Marijo Basic and personally benefitted from the breaches. (*Id.*)

■ In their summary judgment motion, the Individual Defendants initially argue that corporate officers do not owe a fiduciary duty to creditors under Illinois law.[3] A federal district court considering state law must attempt to predict how the state supreme court would decide the issue presented. *See, e.g., Allen v. Transamerica Ins. Co.,* 115 F.3d 1305, 1309 (7th Cir.1997). Considering Illinois Supreme Court precedent regarding this issue, the Court finds that Illinois law recognizes liability for individual officers for breach of a fiduciary duty to creditors under certain circumstances.

■ The Illinois Supreme Court has "long recognized that corporate officers and directors occupy a fiduciary relationship towards their corporation and shareholders[.]" *Brown v. Tenney,* 125 Ill.2d 348, 360, 126 Ill.Dec. 545, 532 N.E.2d 230, 235 (Ill.1988). But, "so long as a corporation remains solvent, its directors ... owe no duties or obligations to others." *Beach v. Miller,* 130 Ill. 162, 170, 22 N.E. 464, 466 (1889). Thus, creditors are "generally not

---

**3.** The parties agree that Illinois law applies to this dispute.

capable" of asserting actions for breach of fiduciary duties against corporate officers. *In re Rehabilitation of Centaur Ins. Co.,* 158 Ill.2d 166, 174, 198 Ill.Dec. 404, 632 N.E.2d 1015, 1018 (1994) (citing *Macaluso v. Jenkins,* 95 Ill.App.3d 461, 469, 50 Ill. Dec. 934, 420 N.E.2d 251 (1981)). *See also In re Reuscher,* 169 B.R. 398, 402 (S.D.Ill. 1994) ("under ordinary circumstances, the officer/director has no fiduciary relationship with a corporation's creditors").

■ A corporate officer or director's duties change, however, if the corporation becomes insolvent. "[D]irectors ... occupy a fiduciary relation towards the creditors when the corporation becomes insolvent." *Atwater v. American Exch. Nat'l Bank of Chicago,* 152 Ill. 605, 613, 38 N.E. 1017, 1022 (1893). Put another way, "the moment a corporation becomes insolvent ... the assets of the corporation must then be regarded as a trust fund for the payment of all its creditors and the directors occupy the position of trustees[ ] and fiduciar[ies][.]" *Coleman v. Howe,* 154 Ill. 458, 467, 39 N.E. 725, 727 (1895). *See also O'Connell v. Pharmaco, Inc.,* 143 Ill. App.3d 1061, 1071, 98 Ill.Dec. 154, 493 N.E.2d 1175, 1182 (1986); *Beach,* 130 Ill. at 170, 22 N.E. at 466.[4]

The Individual Defendants suggest that, at most, the Illinois Supreme Court has merely found that directors, not officers, may owe fiduciary duties to creditors. (Defs. Reply at 4.) It is true that many of the cases discussing the fiduciary duties to creditors have merely discussed the liability of "directors." Nevertheless, the Illinois Supreme Court has long recognized that both directors *and* officers owe fiduciary duties to their corporation, *see Tenney,* 125 Ill.2d at 360, 126 Ill.Dec. 545, 532 N.E.2d at 235, and the Individual Defendants have provided this Court with no

authority for their assertion that the court intended to limit the fiduciary relationship with creditors solely to directors. Indeed, Illinois appellate courts have consistently held that the fiduciary duty to creditors extends to "officers" of a corporation. *See, e.g., O'Connell,* 143 Ill.App.3d at 1071, 98 Ill.Dec. 154, 493 N.E.2d at 1182; *Circle Sec. Agency, Inc. v. Ross,* 99 Ill.App.3d 1111, 1114, 55 Ill.Dec. 110, 425 N.E.2d 1283, 1286 (1981). As such, this Court predicts that the Illinois Supreme Court would find that both corporate officers and directors have a fiduciary duty to the corporation's creditors when the corporation becomes insolvent.

Here, Technic has presented evidence that the Individual Defendants planned and effected the transfer of substantially all of Environmental's assets to another Basic family company when Environmental owed Technic approximately $1 million. (*See* Pl. 12(N) Add. Facts. ¶¶ 6, 18–19, 22–25, 28–36, 40, 44–59.) Moreover, as is relevant in determining whether the officers of Environmental had a fiduciary duty to Technic under Illinois law, Technic has provided sufficient facts that, at the time of the transfer: (1) it was a creditor of Environmental, and (2) Environmental was insolvent.

■ First, Technic has provided evidence that, at the time of the asset transfer, Technic was a creditor of Environmental. "The word 'creditor' means a person to whom a debt is owing by another person. That debt need not be due and payable. It is sufficient that the debt exists and is owing." *Circle Sec.,* 99 Ill.App.3d at 1114, 55 Ill.Dec. 110, 425 N.E.2d at 1286 (citations omitted). *See also Klingman v. Levinson,* 114 F.3d 620, 626 (7th Cir.1997) (individual became creditor for purposes of

---

4. Technic asserts that Illinois law actually extends the fiduciary duty further, namely to when "considering transactions that may have the effect of rendering a corporation insolvent, such as a fraudulent transfer." (Pl. Resp. at 4.). Although the case Technic predominately relies on for this assertion appears to stand for this proposition, *see In re Aluminum Mills Corp.,* 132 B.R. 869, 891 (Bkrtcy. N.D.Ill.1991), that court did not cite any Illinois state law authority for its holding, and the precedent considered by this Court does not indicate that the Illinois Supreme Court has extended the fiduciary duties that broadly.

fraudulent conveyance action when claim arose, even though it was not reduced to judgment until later). Here, there is evidence that Environmental may have owed Technic debt well before the asset transfer, and that the asserted debt went unpaid. (*See* Pl. 12(N) Supp. Add. Facts ¶ 1.) Technic has additionally submitted evidence that, by May 1992, it had asserted claims against Environmental totaling over a $1 million and, by June 6, 1993, had filed draft points of claim in an arbitration proceeding against Environmental. (*See* Pl. 12(N) Add. Facts ¶ 25.)

■ Moreover, Technic has provided sufficient evidence that Environmental had become insolvent before the transfer of its assets. Under Illinois law, "[a] debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation." 740 ILCS 160/3(a). Further, "[a] debtor who is generally not paying his debts as they become due is presumed to be insolvent." 740 ILCS 160/3(b). Here, Technic has presented sufficient evidence that, at the time of the transfer of Environmental's assets: (1) Environmental was generally not paying debts as they came due (*see* Pl. 12(N) Add. Facts ¶¶ 36–37, 39, 43), and (2) its debts exceeded its assets at fair market value, (*see* Pl. 12(N) Add. Facts ¶¶ 23–26, 28, 34–43, 48–49, 52–54, 60; Pl. 12(N) Supp. Add. Facts ¶ 2).

■ Having established that factual issues concerning Technic's status as a creditor and Environmental's solvency allow Technic to proceed against Environmental's corporate officers for breach of fiduciary duty, the next inquiry in resolving the Individual Defendants' summary judgment motion is whether each of the individual defendants was an officer of Environmental. This inquiry is easy with respect to John, Sr. and Marijo Basic. They concede that they were officers of Environmental (*see* Defs. Mem. at 8); therefore, summary judgment must be denied as to them.

As to John, Jr., Technic asserts that there is at least an issue of fact as to whether he was an officer of Environmental. It is undisputed that while he was employed by Environmental, John, Jr. received the title "Executive Vice President" from John, Sr. (Defs.12(N) Resp. ¶ 10.) Although Defendants contend that John, Jr. "was an Environmental officer in name only" (*see* Defs. Reply at 2), the Court finds that from the facts in the record, a jury could infer that: (1) John, Sr. created an officer position for John, Jr. consistent with the corporation's by-laws (*see* Pl. 12(N) Add. Facts ¶¶ 5, 8–9, 11; Pl. 12(N) Resp. ¶¶ 14, 17, 19; Defs. 12(M), Ex. D); and/or (2) John, Jr. was "appointed" an officer by John, Sr. consistent with the corporation's by-laws (*see* Pl. 12(N) Add. Facts ¶¶ 5, 7–11). Because there is an issue of fact as to whether John, Jr. was an officer of Environmental and, consequently, subject to a possible fiduciary duty to Technic, summary judgment as to John, Jr. must be denied.[5]

That leaves Peggy Basic. Technic claims that, although Peggy Basic was not an officer of Environmental, there is an issue of fact as to whether she induced or participated in breaches of fiduciary duties by the other Basic family members in violation of Illinois law. (*See* Pl. Resp. at 8.)

■ Initially, the Individual Defendants contend that Illinois law does not recognize liability for inducement or participation in breaches of fiduciary duties. Although the Illinois Supreme Court has apparently not explicitly designated such a

---

**5.** In addition, there may be an issue of fact as to whether John, Jr. was a "de facto" officer of Environmental. "Corporate officers exercising the functions of their offices under color and claim of authority, even if unlawfully elected, are nevertheless de facto officers." *H & H Press, Inc. v. Drew Axelrod,* 265 Ill. App.3d 670, 679, 202 Ill.Dec. 687, 638 N.E.2d 333, 339 (1994). De facto officers acts are valid "as against the public or third parties." *Clark v. Board of Fire & Police Comm'rs of the Village of Bradley,* 245 Ill.App.3d 385, 389, 184 Ill.Dec. 509, 613 N.E.2d 826, 828 (1993).

cause of action, the Illinois appellate court clearly has. *See Regnery v. Meyers*, 287 Ill.App.3d 354, 364, 223 Ill.Dec. 130, 679 N.E.2d 74, 80 (1997) ("A third party who colludes with a fiduciary in committing a breach of duty, induces or participates in such breach, and obtains the benefits therefrom is directly liable to the aggrieved party."). Finding no persuasive indications as to why the Illinois Supreme Court would not adopt this cause of action, this Court does so. *See Sears, Roebuck & Co. v. Malony*, No. 97 C 7165, 1998 WL 214689, at *6 (N.D.Ill. April 22, 1998) (citing *Regnery* as Illinois standard for inducement to breach fiduciary duty); *Hastings v. Fidelity Mortgage Decisions Corp.*, 984 F.Supp. 600, 614 (N.D.Ill.1997) (same).

■ Here, Technic has presented sufficient evidence to raise an issue of material fact as to whether Peggy Basic participated in planning and effecting the transfers of Environmental's assets and benefitted from those transfers. (*See* Pl. 12(N) Add. Facts ¶¶ 32–33, 44–48, 50–58.) As such, summary judgment must additionally be denied as to her.[6]

### CONCLUSION

For the reasons set forth above, the summary judgment motion with respect to Count Six of the Third Amended Complaint brought by John N. Basic, Sr., Marijo Basic, John Basic, Jr. and Margaret Mary "Peggy" Basic is denied.

---

**6.** Technic has also presented evidence that John, Jr. participated in planning and effecting the transfers of Environmental's assets and benefitted from those transfers. (*See* Pl. 12(N) ¶¶ 31–33, 44–48, 50–58.) Therefore, to the extent that John, Jr. was not found to be an officer of Environmental, he could be subjected to liability for inducing or participating in the alleged breach of fiduciary duty as well.